**In re QUEENY/CORINTHOS.**

**Civ. A. Nos. 75–364, 75–2110 and 77–2362.**

United States District Court,
E. D. Pennsylvania.

July 17, 1980.

See also, 503 F.Supp. 337, 503 F.Supp. 350 and 503 F.Supp. 365.

James F. Young, Krusen, Evans & Byrne, Philadelphia, Pa., for the Queeny Interests.

Richard W. Palmer, Palmer, Biezup & Henderson, Philadelphia, Pa., for the Corinthos Interests.

Benjamin F. Stahl, Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., for BP Oil, Inc., Sohio Petroleum Co.

## MEMORANDUM OPINION

WEINER, District Judge.

This action arises out of a collision which occurred on the Delaware River at Marcus Hook, Pennsylvania on January 31, 1975. The vessels involved were the SS Edgar M. Queeny (Queeny), an American steamship, and the S. T. Corinthos (Corinthos), a Liberian steam tanker.

As a result of the incident numerous proceedings were instituted.[1] A limitation of liability action (C.A. No. 75–364) was filed by Bankers Trust Company (Bankers Trust) as Owner–Trustee, Monsanto Company (Monsanto) as Chartered Owner, and Keystone Shipping Co. (Keystone), as Chartered Owner and Operator of the Queeny (Queeny interests).

A second limitation action (C.A. No. 75–2110) was filed by Villaneuva Company Naviera, S.A. (Villaneuva) owner of the Corinthos (Corinthos interests). Various other parties have filed claims in these admiralty proceedings, among them Sohio Petroleum Company and B.P. Oil, Inc. (BP/Sohio), owner and lessee–operator, respectively, of the Marcus Hook refinery at which the Corinthos was discharging its cargo of crude oil when the incident occurred.

BP/Sohio has also filed a products liability suit (C.A. No. 77–2362) against Bethlehem Steel Corporation (Bethlehem), builder of the Queeny, General Electric Company (G.E.), manufacturer of the Queeny's propulsion system, and the William Powell Company (Powell), manufacturer of certain parts used in the Queeny's propulsion system (products defendants). The products defendants have been joined in the limitations actions as third party defendants, and have filed third party complaints against BP/Sohio in the limitations and product liability actions. The Queeny interests then filed a counterclaim against BP Ltd. In addition, the Queeny interests have filed a cross–claim in the limitation proceeding,

1. Sixty cases which included 112 personal injury, property damage and other sundry matters. This entire matter was transferred to this court in December, 1977. All the personal injury cases have been resolved, the majority of the property damage cases have been resolved and the balance are being processed.

against the products defendants alleging products liability, negligence, and breach of implied and express warranties.

The consolidated limitation actions were tried before this court. At the time of trial the products liability action and all claims against BP Ltd. were severed and continued upon the motion of the products defendants. By opinion and order of February 19, 1980, 503 F.Supp. 337, this court denied the complaint and petition of the Queeny interests for exoneration from and limitation of liability, and granted the complaint and petition of Villaneuva for exoneration and limitation of liability.

Presently before the court are the motions of the products defendants to dismiss the cross–claim filed by the Queeny interests in the admiralty proceedings. G.E. and Bethlehem have filed one motion; Powell has filed a separate motion. Essentially the same contentions are made in each motion. The products defendants argue first that the pleading filed by the Queeny interests is not a proper cross–claim under Rule 13(g) of the Federal Rules of Civil Procedure (F.R.C.P.) as they (products defendants) are not co–parties but rather third party defendants, and, second, that a third party complaint against them under Rule 14 of the Federal Rules is time barred by laches or the statute of limitations, or Local Rule 24. The Queeny interests argue in response that a cross–claim by a petitioner in a limitation of liability proceeding is permissible against a third party defendant joined by a claimant under admiralty rules of a procedure, and that the claim is not time barred. For the reasons set forth below, the motions are denied.

We note at the outset that this is a case of first impression, and that this court does not wish to mire itself in a lengthy discussion of procedural technicalities. It was not the purpose of the Federal Rules of Civil Procedure or of the unification of admiralty and civil practice to further complicate litigation with disputes over the proper form of pleadings. "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be deci-sive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Foman v. Davis*, 371 U.S. 178, 181–82, 83 S.Ct. 227, 229, 9 L.Ed.2d 222 (1962); *Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). "The Rules themselves provide that they are to be construed 'to secure the just, speedy, and inexpensive determination of every action.' Rule 1." *Foman v. Davis*, 371 U.S. at 182, 83 S.Ct. at 230.

■ Apart from the technical procedural question of whether the Queeny interests' claim against the products defendants is to be classified as a cross–claim or a third party claim, it is manifest that the claim is one which falls squarely within the court's admiralty jurisdiction. In the words of the Supreme Court, "[t]he question is not what 'tag' we put on the proceeding ... but rather whether the court has jurisdiction of the subject matter and of the parties." *British Transport Commission v. United States*, 354 U.S. 129, 137, 77 S.Ct. 1103, 1107, 1 L.Ed.2d 1234 (1957).

The Court went on to hold that a "necessary concomitant of jurisdiction" in an admiralty case such as the one before this court is that the court "have power to adjudicate all of the demands made and arising out of the same disaster." *Id.* at 138, 77 S.Ct. at 1107. Moreover, [L]ogic and efficient judicial administration require that recovery against all parties at fault is as necessary to the claimants as is the fund ..." *Id.* Such considerations are of special significance to this court in a case as complex as this.

The existence of personal and subject matter jurisdiction here is clear. The products defendants have already been joined as third party defendants in the limitations proceeding, and the subject matter of the cross–claim, the collision between the Queeny and Corinthos is already under our jurisdiction. Within the scope of this subject matter jurisdiction are all claims arising out of the collision, including this claim brought against the products defendants, alleging products liability and breach of warranty.

In our Opinion and Order of February 19, 1980, 503 F.Supp. 337, we determined that the Queeny's defective astern guardian valve and astern turbine contributed to the collision. The Queeny interests now seek to demonstrate that the products defendants should be found liable for defects in the building and manufacture of the Queeny and certain of its component parts and systems. Needless to say, our jurisdiction over the collision and the ships involved necessarily includes not merely the ships' hull but also their engines, appurtenances, and components. This court's admiralty jurisdiction is not so limited as to be unable to take cognizance of this claim by a ship's owners and operators against the ship's builders and suppliers, especially when the court has already determined that defective component parts of the ship were a sufficiently contributing cause of the collision as to deny the ship's owners and operators the benefits of limited liability.

Additionally, since the parties and this court have for convenience referred to the cross–claim filed by the Queeny interests as involving products liability and products defendants, we feel compelled at this time to point out that our use of that term should in no way be construed as an indication that this court considers the claim to be a civil action in tort rather than but another of the many admiralty claims arising out of the collision and comprising a part of this admiralty proceeding.

As for the particular "tag" with which this claim should be labelled, careful consideration of the relationship between all the parties in general, and Queeny interests and the products defendants in particular lead us to conclude that a cross–claim is the proper form for the pleading filed by the Queeny interests.

Rule 13(g) provides:

(g) Cross–Claim Against Co–Party. A pleading may state as a cross–claim any claim by one party against a co–party arising out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein or relating to any property that is the subject matter of the original action. Such cross–claim may include a claim that the party against whom it is asserted is or may be liable to the cross–claimant for all or part of a claim asserted in the action against the cross–claimant.

Cross–claims are pleadings against co–parties; they are claims litigated by parties on the same side of the main litigation. *See, Stahl v. Ohio River Co.,* 424 F.2d 52, 55 (3d Cir. 1970). The Queeny interests and the products defendants are indeed co–parties sharing a like status on the same side of this litigation. Queeny is a petitioner for limitation of liability in the admiralty action; the products defendants are third party defendants in that action. To be on the same side of the litigation these parties need not have an identity of interests, issues or positions with respect to each other, but need only stand in a similar posture in relation to claims of opposing parties brought against each of them, even though such claims are brought separately, by different parties, and on different legal theories. Certainly the Queeny interests, owners and operators of the Queeny, and the products defendants, builders of and manufacturers of equipment for the Queeny, are more easily identified as standing on the *same* side of this litigation than as on opposing sides. On the opposing side are parties such as the Corinthos interests and BP/Sohio which is also a plaintiff in the products liability action. This Court has already determined that the Queeny was at fault in the collision between it and the Corinthos. *See,* Memorandum Opinion and Order of February 19, 1980, 503 F.Supp. 337. The Queeny interests allege that the products defendants, builders and suppliers of the Queeny, are liable for the collision under a products liability theory. The Corinthos interests, BP/Sohio, and other claimants on the opposing side of the litigation are the parties which were injured as a result of the actions of Queeny. Thus, on one side stands those parties actually or allegedly responsible for the collision, and on the other side stands those parties injured or damaged. We find the cross-claim to be proper under F.R.C.P. 13(g).

Finally, we reject any argument that the cross–claim is barred by laches, as the products defendants are unable to show the requisite prejudice. Any claim by the products defendants of prejudice resulting from the Queeny interests' cross–claim is completely without merit, as these defendants have had notice of a products liability claim against them since the time of the filing of the products liability action by BP/Sohio in 1977. The cross–claim asserted by the Queeny interests is essentially identical in nature to that claim.

Since the Queeny interests' cross–claim is an integral part of the admiralty proceeding before this court and not a separate civil action in tort, we shall schedule a non–jury trial in this matter. The Seventh Amendment guarantee of right to trial by jury in suits at common law does not embrace suits of admiralty jurisdiction. *See, Curtis v. Loether*, 415 U.S. 189, 193, 94 S.Ct. 1005, 1007, 39 L.Ed.2d 260 (1973); *Parsons v. Bedford*, 3 Pet. 433, 446–47, 28 U.S. 433, 7 L.Ed. 732 (1830).